IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JACOB D. PEYTON, ) | | Civil Action No. 7:12-cv-00481 |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| HAROLD W. CLARK, et al., ) | | By: Hon. Robert S. Ballou |
|     Defendants. ) | | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Jacob D. Peyton, a Virginia inmate proceeding with counsel, filed a verified Complaint pursuant to 42 U.S.C. § 1983. Peyton names as defendants Harold W. Clarke, the Director of the Virginia Department of Corrections ("VDOC"); John M. Jabe, former Deputy Director of VDOC Operations; James R. Camache, former Deputy Director of VDOC Community Corrections; Randall Mathena, former Warden of the Wallens Ridge State Prison ("WRSP"); Jeff Kiser, former Assistant Warden of WRSP; and Correctional Officers Major John C. Combs, Sergeant Nathan D. Jackson, Sergeant John McQueen, and K-9 Officer Steele. Peyton alleges that Defendants are liable for using excessive force or being deliberately indifferent to a substantial risk that the excessive force would occur, in violation of the Eighth Amendment of the United States Constitution.

By order entered February 6, 2014, the Honorable Jackson L. Kiser, Senior United States District Judge of this court, referred Defendants' motion for summary judgment to me for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I **FIND** that genuine issues of material facts remain in dispute by which Peyton could prove that Sgt. Jackson and Officer Steele used excessive force and Maj. Combs and Sgt. Jackson are liable as bystanders; however, I also **FIND** that no reasonable trier of fact could find in Peyton's favor for

any other claim.  Therefore, I **RECOMMEND** that Defendants' motion for summary judgment be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Procedural History

Peyton's § 1983 Complaint, initially filed pro se, named as defendants Director Clarke, Warden Mathena, Maj. Combs, Sgt. Jackson, Ofc. Steele, and five Unknown Members of the WRSP emergency response team and demanded damages, costs, and an injunction closing WRSP. Soon after the Clerk issued waivers of service on Defendants, counsel entered an appearance on Peyton's behalf and amended the Complaint to, inter alia, abandon claims against the Unknown Members, modify the relief requested, and join Sgt. McQueen, Asst. Warden Kiser, Dep. Dir. Jabe, and Dep. Dir. Camache as defendants.  The court granted the parties' request to enter a scheduling order, and Defendants subsequently filed the instant motion for summary judgment supported with affidavits.  Peyton responded to that motion and filed a video recording of the pod during the alleged use of excessive force and an excerpt of the applicable VDOC Operating Policy governing the use of force in VDOC facilities.

### B. The Evidence

At approximately 2:48 p.m. on August 2, 2011, two inmates began fighting while Peyton was in a shower at the back of WRSP's B-1 pod.  Security staff responded to the disturbance, and all offenders not involved in the fight were ordered to lie down on the ground with their arms extended and hands open.

2

Peyton alleges that he did not hear any warning shot or order to get on the floor.[1] Maj. Combs entered the pod, approached Peyton, and ordered him to lay down on the floor of the shower. Peyton claims that he complied with the order and laid on the shower floor, but that Maj. Combs directed Sgt. Jackson to use oleoresin capsicum ("OC") spray[2] on Peyton, ordered Ofc. Steele to make Axel bite Peyton, and ordered other officers to block the view of the pod video camera.[3]

In support of his claims, Peyton filed two affidavits from inmates who were in the pod during these events. Inmate Benjamin Powell states that he saw and heard Maj. Combs order the correctional officers to attack Peyton and command the K-9 dog, Axel, to bite Peyton while Peyton laid on the shower floor. Although not alleged by Peyton, Powell also states that he saw "a couple of [c]orrectional [o]fficers" kick Peyton in the face. (ECF 60 at 1, ¶ 7.)

Inmate Michael Copes states the following pertinent facts. Correctional officers ordered Peyton to lie down at the shower's entrance. (ECF 61 at 1, ¶ 8.) While Peyton was lying in the "push-up position" on the floor, Ofc. Steele brought Axel within inches of Peyton's head, and Peyton "began to stand up[] [i]n a non-aggressive stance." (Id. at 1-2, ¶¶ 9-11.) Ofc. Steele released Axel to attack Peyton while correctional officers used so much OC spray that Copes "had a hard time breathing" in his cell on the second floor. (Id. ¶¶ 13-14, 16.) Copes heard Peyton screaming in pain throughout the incident. (Id. ¶ 15.)

---

[1] Peyton does not state whether he saw the approximately forty other inmates in the pod lying face down on the floor with their arms out stretched.

[2] OC spray is a chemical agent similar to what is commonly known as pepper spray and irritates a person's eyes, throat, and nose. See, e.g., Park v. Shiflett, 250 F.3d 843, 849 (describing the physiological effects of OC spray).

[3] The video recording is not probative of the interactions between Peyton and Maj. Combs, Sgt. Jackson, and Ofc. Steele. Cf. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (omitting internal quotations, alterations, and citations)).

3

Defendants argue that use of the OC spray and directing Axel to attack Peyton were necessary and lawful uses of force because Peyton refused orders to lie peacefully on the floor. Defendants aver that Maj. Combs, Sgt. Jackson, and Ofc. Steel arrived in the B-1 pod and saw all inmates in the pod on the floor except for two inmates in the shower. Maj. Combs ordered Peyton and the other inmate to lie down, and Peyton and the other inmate complied. However, Peyton began cursing and "aggressively began to stand up." Peyton refused Sgt. Jackson's subsequent orders to stay on the floor, and Sgt. Jackson used a one-half to one-second burst of OC spray to Peyton's forehead and eye area. Peyton still refused to comply with orders to remain on the floor, and Ofc. Steele ordered Axel to bite Peyton's right shoulder. Once Peyton complied with orders to stay on the floor, Ofc. Steele removed Axel from Peyton, and Sgt. Jackson approached Peyton. However, Peyton again attempted to stand up. Consequently, Ofc. Steele ordered Axel to bite Peyton's left leg. After being bitten again, Peyton struck Axel in the head, and Axel bit Peyton's right leg. Once Peyton obeyed orders to stop attacking Axel, Ofc. Steele commanded Axel to return to Ofc. Steele, and Peyton was placed in restraints without further incident. Upon arriving at the medical department, Peyton voiced no complaints, and a nurse noted Peyton had bilateral eye irritation, multiple abrasions, and dog-bite puncture wounds. The nurse recommended that Peyton use triple antibiotic ointment on the dog bite wounds for seven days. Peyton also received a prescription for an antibiotic twice a day for a week. Peyton then showered and received clean clothes.

Axel was assessed and treated at a local animal hospital for facial trauma and forelimb lameness. Peyton was charged with and convicted of two institutional charges: causing bodily injury to a VDOC canine and disobeying a direct order. Warden Mathena upheld the convictions on appeal and also denied Peyton's grievance about staff's alleged use of excessive force.

4

## II. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is proper where, viewing the facts in the light most favorable to the plaintiff, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden of demonstrating the absence of any material issue of fact but need not support its motion with affidavits or other materials negating the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings but must come forward with some form of evidentiary material allowed by Rule 56 demonstrating the existence of a genuine issue of material fact requiring a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Celotex, 477 U.S. at 324. A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the nonmoving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); see Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (recognizing that a court need not accept the legal conclusions drawn from the facts or accept as true unwarranted inferences, unreasonable conclusions, or arguments). Summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

### B. Excessive Force

The Eighth Amendment does not prohibit all application of force or infliction of pain against prisoners. United States. v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). "[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley

5

v. Albers, 475 U.S. 312, 319 (1986). When an inmate claims officers used excessive force against him, the court asks two questions: whether a specific prison official subjectively "acted with a sufficiently culpable state of mind and [whether] the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (internal quotations marks omitted).

In deciding the subjective prong, the court asks whether officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 7 (quoting Whitley, 475 U.S. at 320-21). The court must "focus on whether the evidence supports the inference that the guards wantonly punished" the inmate, and not on whether their actions were "necessary" in the court's eyes. Whitley, 475 U.S. at 319, 322. In Whitley, the Supreme Court recognized that relevant factors to consider in this inquiry are (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible officials based on the facts known to them, and (5) any effort made to temper the severity of a forceful response. Id. at 321. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id.

"In recognition that the prison environment is a dangerous one for correctional officers, prison administrators must be accorded 'wide-ranging deference' to design and implement policies and practices that in their judgment are necessary for the preservation of order and security." Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Whitley, 475 U.S. at 321-22). Likewise, courts "must accord due deference to an officer's efforts to restrain a[n] [inmate] when

6

faced with a dynamic and potentially violent situation; [to do] otherwise [would be to] give 'encouragement to insubordination in an environment which is already volatile enough.'" Scarbro v. New Hanover Cnty., 374 F. App'x 366, 370 (4th Cir. 2010) (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999)).

In addressing the less demanding, objective component under Hudson, the court asks whether the force applied was "nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). The objective inquiry is "responsive to contemporary standards of decency," and in the excessive force context, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9. Nevertheless, the extent of the inmate's injury is relevant as it "may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation" or may "provide some indication of the amount of force applied." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7).

### C. Failure to Protect or Intervene

A correctional officer may be liable on a theory of bystander liability if the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 204 (4th Cir. 2002) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988) (observing that an officer who stands by and does not seek to assist the victim could be a "tacit collaborator")). A plaintiff must prove a violation of a constitutional right as a prerequisite to establishing bystander liability. Willis v. Oakes, 493 F. Supp.2d 776, 784 (W.D. Va. 2007).

7

### D. Supervisory Liability

To show that a supervising officer failed to fulfill his duty to protect plaintiff by ensuring that his subordinates act within the law, plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to people like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F. 3d 791, 799 (4th Cir. 1994); Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Establishing a "pervasive and unreasonable risk" requires evidence that the conduct is widespread or at least has been used on several different occasions. Slakan, supra. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. at 373.

### E. Conditions of Confinement

The Eighth Amendment also protects inmates from cruel and unusual living conditions. Helling v. McKinney, 509 U.S. 25, 31 (1993). In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) an objective, "sufficiently-serious" deprivation of a basic human need, and (2) a prison official's subjective, deliberate indifference to that deprivation. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Deliberate indifference requires that a state actor was personally aware of facts indicating a substantial risk of serious harm and that the actor actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "A

8

defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52. "[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). Mere negligence does not qualify as deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347 (1986); Grayson, 195 F.3d at 695.

### III. CONCLUSIONS OF LAW

Viewing the evidence in a light most favorable to Peyton and without weighing credibility, disputes of material facts preclude summary judgment for the excessive force claims against Sgt. Jackson and Ofc. Steele and the failure to protect claims against Sgt. Jackson and Maj. Combs. However, defendants are entitled to summary judgment for all other claims about failure to protect, supervisory liability, conditions of confinement, and negligence.

#### A. Excessive Force Claims Against Sgt. Jackson and Ofc. Steele

The subjective factors of Whitley reflect disputes of material facts whether Sgt. Jackson and Ofc. Steele maliciously and sadistically used OC spray and Axel for the very purpose of causing harm, and Peyton's exposure to the OC spray and puncture wounds are objectively harmful enough to satisfy the objective prong of the Eighth Amendment. See Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) ("It is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'" (quoting Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984))).

The evidence is in dispute whether there was any need to use force. Peyton allegedly was lying on the shower floor and complying with orders when Sgt. Jackson used OC spray and Ofc.

9

Steele had Axel attack Peyton. If Peyton was lying in the shower, as alleged, it is difficult to surmise what threat Maj. Combs, Sgt. Jackson, and Ofc. Steele reasonably perceived from Peyton. Although a small burst of OC spray may be considered a tempered response when compared to the use of physical force, the same cannot be said of its gratuitous use or ordering Axel to bite and cause multiple puncture wounds to an inmate who was lying peacefully on the floor. Consequently, Peyton's evidence states a violation of the Eighth Amendment that was clearly prohibited at the time of the incident, and the court should not find that Sgt. Jackson and Ofc. Steele are entitled to judgment as a matter of law.

### B. Failure to Protect Claims Against Sgt. Jackson, Maj. Combs, and Kiser

Peyton argues that Sgt. Jackson, Maj. Combs, and Asst. Warden Kiser are liable for not stopping the alleged excessive force while they were in the pod. A dispute of material facts similarly precludes summary judgment in favor of Maj. Combs and Sgt. Jackson. Viewing the evidence in a light most favorable to Peyton, Maj. Combs was present when Sgt. Jackson used the OC spray and Ofc. Steele used Axel, and Sgt. Jackson was present when Ofc. Steele used Axel, and under this evidence, Maj. Combs and Sgt. Jackson could have recognized that their subordinates' use of Axel and OC spray on a compliant inmate who was lying in the shower was excessive and used solely to cause harm. Despite the alleged apparentness of the constitutional violation, Maj. Combs and Sgt. Jackson did not intervene to stop the alleged excessive force.

However, Asst. Warden Kiser should be entitled to summary judgment. Peyton merely states that Asst. Warden Kiser "was alleged to be in the pod" when the incident occurred. This allegation, without more, is not sufficient to state a claim of bystander liability and cannot withstand Asst. Warden Kiser's averment that he arrived in the pod only after the alleged

10

excessive force ended. Accordingly, Asst. Warden Kiser is entitled to qualified immunity and summary judgment for this claim.[4]

## C. Supervisory Liability Claims

Peyton concludes that Sgt. McQueen, Asst. Warden Kiser, Warden Mathena, and Dir. Clarke are liable as supervisors because they were aware of the excessive use of force by dogs and correctional officers at WRSP and failed to remedy the problem by intervening or requiring training. (ECF 24 ¶¶ 4-6, 9-10.) However, Peyton wholly fails to provide evidence that any of these supervisors' acts or omissions satisfies the elements of Shaw and Slakan. See, e.g., City of Canton v. Harris, 489 U.S. 378, 388 (1989) (noting a failure to train is actionable only if it equates to being deliberately indifferent to the rights of persons with whom the subordinates interact). Accordingly, Sgt. McQueen, Asst. Warden Kiser, Warden Mathena, and Dir. Clarke are entitled to qualified immunity and summary judgment for these claims.

## D. Conditions of Confinement Claims

Peyton describes two related conditions of confinement claims about his exposure to dogs. First, Peyton alleges that Sgt. McQueen, Maj. Combs, Asst. Warden Kiser, Warden Mathena, Dep. Dir. Camache, Dep. Dir. Jabe, and Dir. Clarke are liable for creating and implementing the VDOC's use of force policy, VDOC Operating Policy 420.1 ("OP"), "as it applies to the use of K9s in the prison. . . ." Second, Peyton alleges that allowing dogs at WRSP exposes him to a substantial risk of harm to which Asst. Warden Kiser, Warden Mathena, Dep. Dir. Camache, Dep. Dir. Jabe, and Dir. Clarke were deliberately indifferent.

---

[4] Qualified immunity shields governmental officials from damages in their individual capacities under § 1983 when, inter alia, a plaintiff fails to establish a violation of a federal right. Saucier v. Katz, 533 U.S. 194, 201 (2001).

11

However, Peyton fails to establish that having dogs in VDOC facilities pursuant to the OP poses a substantial risk of harm to him or other VDOC inmates.[5] The OP restricts all uses of force "to instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control, and then only as a last resort and in accordance with appropriate statutory authority." (ECF 73.) The OP further states that force may never be used for vindictive or retaliatory purposes and is never justifiable as punishment. (Id.) The OP permits the use of a dog as means of force only as a good-faith effort to maintain or restore discipline and prohibits using a dog maliciously and sadistically to cause harm. See Stanley, 134 F.3d at 634 (noting prison administrators must be accorded wide-ranging deference to design and implement policies and practices needed to preserve order and security). Furthermore, there is no evidence in the record that the presence of trained dogs at WRSP or any other prison poses an unreasonable risk to the constitutional rights or physical well-being of compliant inmates or poses any risk greater than other legitimate tools of prison security, such as firearms, OC spray, or steel restraints. Accordingly, Sgt. McQueen, Maj. Combs, Asst. Warden Kiser, Warden Mathena, Dep. Dir. Camache, Dep. Dir. Jabe, and Dir. Clarke are entitled to qualified immunity and summary judgment for these claims.

### E. Damages, Negligence, the Fourteenth Amendment

Peyton sues Defendants in their individual and official capacities for both damages and an injunction. However, the Eleventh Amendment prohibits Plaintiff from recovering damages against Defendants in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71

---

[5] Peyton also fails to establish that Sgt. McQueen, Maj. Combs, Asst. Warden Kiser, Warden Mathena, or Dir. Clarke was involved with the creation or enactment of the OP.

(1989); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995).

Throughout the Complaint and amendments, Peyton argues that Defendants, at various times, should have acted differently by either deviating from or complying with various VDOC policies, procedures, or customs. These allegations most closely allege negligence, which is not a basis for liability under the Eighth Amendment. See Whitley, 475 U.S. at 319 ("[O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]. . . ."); see also Daniels v. Williams, 474 U.S. 327 (1986) (recognizing that the Due Process Clause of the Fourteenth Amendment is not implicated by an official's lack of due care that causes unintended injury to life, liberty, or property); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976) (recognizing that medical malpractice is not cognizable as cause of action in a § 1983 proceeding). Furthermore, a claim that prison officials have not followed their own independent policies or procedures does not state a constitutional claim. See, e.g., United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990).

Peyton concludes without explanation that Defendants' alleged acts violate the Fourteenth Amendment. (ECF 1 at 9, ¶ 21.) Peyton's bare legal conclusion is not a sufficient explanation to state a viable claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting a plaintiff's basis for relief requires more than labels and conclusions).

## IV. RECOMMENDED DISPOSITION

Based on the stated findings and for the stated reasons, I **CONCLUDE** that Defendants' motion for summary judgment should be denied for allegations of excessive force and bystander liability against Maj. Combs, Sgt. Jackson, and Ofc. Steele and granted for all other claims.

13

The Clerk of the Court is **DIRECTED** to **TRANSMIT** the record in this case to the Honorable Jackson L. Kiser, Senior United States District Judge.  Both sides are reminded that they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof, pursuant to Rule 72(b).  Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is further directed to send copies of this Report and Recommendation to counsel of record.

      Enter:  August 19, 2014

      */s/ Robert S. Ballou*

      Robert S. Ballou
      United States Magistrate Judge